Judge Mills
delivered the opinion of the court.
John, and Charles J. Wiester and John M. Price, merchants of Philadelphia, trading in partnersnip by the name and stile of J. and C. Wiester, filed their declaration in assumpsit, for goods, wares and merchandise, sold and delivered, and on an account stated, and thereon issued their writ, from the clerk’s office of the Franklin circuit court, against Alexander Crawford and Achilles Snead, merchants, and partners trading under the name of Alexander Crawford & Co. On this writ the sheriff of Franklin returned “executed” on the defendant Snead—“Alexander Crawford no inhabitant of my bailiwick.” Sneed appeared when the suit was set for trial, and pleaded non assumpsit, and other special pleas, which will be noticed hereafter. After the jury were summoned and while the trial was progressing the court directed the following order to be made:—“The “sheriff having returned that the defendant Crawford is no “inhabitant of his bailiwick, it is therefore ordered that this suit as to him do abate.” The propriety of the sheriff’s return, and the order of the court thereon, abating the suit, as to Crawford, is questioned by the assignment of error, and is the first point which claims the consideration of this court. It is contended that such a return was unauthorised by the sheriff, and that the order of the court terminating the suit, as to Crawford, on said return was unauthorised, and that the plaintiffs could not proceed to trial, against the defendant Sneed, on a joint contract and joint process, until proceedings were had by outlawry or attachment or proclamation against Crawford; or the sheriff should return that he was a known inhabitant of another county, whereby the writ could be abated under the act of assembly directing an abatement in such cases.
A deft in this state could never be proceeded against to outlawlry Such process is unknown to our law:—even in England outlawry could only be based on the return 'non est inventus.'
The court will proceed to enquire whether the plaintiff could have proceeded by either of these modes, and will first respond to the proceedings by outlawry. It may well be doubted, whether proceedings to outlawry, in civil cases were ever in force in this country, or rather, whether any court ever had authority so to proceed. It is evident the county courts of Virginia, never had since the year 1748. For in establishing county courts in that year, the proceedings to outlawry are expressly taken away from them. Virg. Bod. Laws 169. § 5. And it is believed that no statute could be found, granting to county courts, that power. It is admitted that the general court of the colony had that power, as will be seen in the Virg. Bod. Laws 297. § 23. But when this court, whose judges were the royal governors and council was dissolved by the revolution and the legislature of the state established another in its stead, that court is expressly directed on the return of pluries not found instead of the process to outlawry formerly used to issue a proclamation, on the return of which, the plaintiff might have judgment for his demand. And the repealing clause of the same act declares that ‘‘all other acts, so far as they relate to any matter or thing contained within the purview of this act are hereby repealed.” Chan. Rev. 72. 76. From which it may be safely argued that the former law which gave the general court the power and the mode of authority, which power and mode was expressly substituted by the latter act, was thereby repealed, and with it the procedings to outlawry. Under this impression our legislature, as well as that of Virginia, seems ever since to have acted. No provision is made, directing the proceeding. The duty or emoluments of no officer is pointed out in executing or conducting the measure. In England, after the return of the exigent and proclamation, the individual was outlawed of course. No judgment was given in favor of the plaintiff. The capias ut. legatum issued. The goods of the defendant were forfeited to the crown. It is true this forfeiture was nominal, and they might be appropriated to the payment of the plaintiff's debt. But this was not a matter of right, and was granted on the petition of the plaintiff, to the crown or its officers. Application was made to the court of exchequer; which court if it did not exceed fifty pounds, might order it at once to be paid over. If it went beyond that sum, the plaintiffs must petition the lords of the treasury, who with the consent of their solicitor, *279 might order the proceeds of the forfeited goods to be paid over. Here we would be utterly at a loss to find the tribunal or the officers who might substitute or act the part of the court of exchequer, or lords of the treasury, and the plaintiff would be as far from getting his debt as ever, even if he succeeded in the forfeiture and sale of the estate of his debtor. No power but that of the legislature could aid his case, or afford him relief. To put the plaintiff to the hazzard and difficulty of such long delay, and of procuring a legislative act to complete his course; when he had another person amenable to the law, jointly bound for the same debt, would be a delay; if not a refusal of justice.
But, if in this, the court should be mistaken, and the proceeding to outlawry is still in force, it will be seen when the court responds to the modes of attachment or proclamation, that it would be equally unavailing to the plaintiff. It is evident from every authority, that proceedings to outlawry could only be had on the return of “non est inventus.” It is equally clear by the express words of the statutes of both Virginia and this state, that no procedings can be had either by attachment or proclamation or publication against a defendant except on the same return of “non est inventus."
In what cases then, is this return proper and when can the sheriff make such return? It was early perceived by the legislature of Virginia, that the return of “not found,” which authorised exparte proceedings against defendants, whether by outlawry, attachment or proclamation, might be attended with serious and outrageous consequences.—The defendant might be a notorious inhabitant of another county, or indeed of another state, territory or government. However ready he might be to discharge his debts, if a return of non est inventus was made against him, he might be outlawed, or an unjust and fraudulent judgment might be obtained against him, from which he could never be relieved. To say nothing of the absurdity that might sometimes happen of one government outlawing the citizen or subject of another who never asked protection from the laws of the government which had declared that he should be put without their protection, and who would regard such proceedings as a mere burtum fulmen citizens of the same government might be ruined by outlawry, or by a judgment founded on attachment or proclamation, barely because the proceedings, did not afford him an opportunity of being heard in a distant *280 county, where they could not suspect them to exist. To remedy such evils and such abuses resulting from the return of “not found,” the colonial legislature of Virginia, as early as 1661, and again in 1705, declared “that no sheriff or “other officer, shall make return upon any writ or precept “that the person against whom the same issued is not to be “found, until he shall actually have been at the dwelling “house or place of residence of such person, and not finding “him shall have left there an attested copy of the same writ or precept.” Henn. Stat. at Large, vol. 1, 79, & vol. 3, 250. By this provision, which perhaps long continued in force, the return of “not found” would not be made in any case, except the defendant had a “dwelling house” or a “place of residence,” in the county where the sheriff acted, and the sheriff had been there and not finding him had left an attested copy of the writ of precept.
What resulted from such a provision? Why evidently that no person could be outlawed, or judgment rendered, against him, by attachment or proclamation unless he had a dwelling or residence in the county, and for the best of all possible reasons; because no return of "non est inventus” could be had against him. This provision, no doubt was discovered in process of time, to restrict too narrowly the return of "non est inventus,” and that there might be vagrant persons commorant in a county, who had no dwelling house or place of residence known within it; but who might be in debt and evade the process of law. It was reasonable and proper to subject such to the pains and penalties of an exparte proceeding. This consideration, no doubt, produced the section which appears in our code. 1 Litt. 84, 584. In which it will be seen that the sheriff is expressly forbidden to make the return of “not found” except in two descriptions of cases, to wit, when the defendant has a known residence in the county, and the sheriff has been at it, and has not found him; but has left a copy; and secondly, when the defendant, although he belongs to the county, is not known to the sheriff. If this latter provision which subjects the defendants to the return of “not found,” when their residence is unknown, ever had a place in the laws of Virginia, previous to our separation; it has escaped the researches of the court. And the provisions published in the revised code; page 89, now stands without it. Be this as it may, it is inserted in ours and must, in the opinion of the court be intended to designate that class of *281 persons and no other, who are commorant in the county, but are vagarious and have no known and certain place of residence. As to such the return of “non est inventus," may be made, as well as those, who have a known residence, at which the sheriff has not found them; but has there left a copy of the process. The return of “not found" then, in this state, must mean one of two things, either, first, that the defendant has a known residence in the county, and that the sheriff has been there and not found him, But has left a copy—or, secondly that although the defendant belongs to the county, he has no known and fixed place of residence, and could not consequently be found. Against persons of these two descriptions, and these only, can the return of “not found” be made—and against these two and these only, can outlawry be had, if it be in force, or can an attachment issue;—or a proclamation be made, as now directed by law. What then must be done with defendants of other descriptions; with known residents of other counties, other states other territories, or governments? Against these, no outlawry, attachment or proclamation can be had; because the sheriff is forbidden to return them “not found,” which alone warrants these proceedings. If such defendants, are jointly bound in contracts with known residents of the county, the writ must issue against them, or the resident defendant may abate the suit by proper plea, shewing that others or another, bound with him is not sued; and yet if they are sued, the law furnishes no means of proceeding against them, for no return can subject them to further proceeding. Of course the proceedings must cease and the plaintiff never obtain judgment; because he cannot proceed against the present defendant without the absentees—nor against the absentees, or with them; because the law furnishes him not with the means or mode of proceeding. Such a conclusion is absurd, and cannot be for a moment indulged. For if the plaintiff proceeds so far against the absentees, that it appears he cannot go further with effect, he ought to be allowed to proceed without them against the resident defendant, who is bound for the whole. This brings the court to consider the return in question. It seems to have been long in practice, and has been found conducive to the attainment of justices. It would seem indeed, by the statute, that if the defendant is a known inhabitant of another county, the sheriff ought to return the “truth of the case,” which would seem to imply that he *282 ought to state "totidem verbis,” that the defendant is a known inhabitant of another county. But this, the court deems not necessary especially when it is considered that whether the defendant is a known inhabitant of another county, or of another state or territory, the consequences are precisely the same. The process in each case, must cease as to him, and the return in question meets either case. It appears to the court that the defendant to whom it applies is not an inhabitant of the county—that he is neither dwelling nor commorant there—and of course further proceedings against him must end. It was no doubt invented by the eheriff for this comprehensive purpose, and has received the sanction of the court of appeals of Virginia. See 1. Wash. 9. And has been recognised as the Virginia practice by the supreme court of the United States. See 7 Cranch, 194.
‘Non est inventus' can only be returned when a defendant has a known place of residence in the county, but but cannot be met with there by the sheriff, who has called & left a copy of the process; or when the deft is commorant in the country without a settled place of residence:—in these cases attachment or proclamation may follow the return.
The stat. authorising a pltf on a joint bond on persons residing in several counties to sue forth process to all the counties, may be used or omitted at the election of the pltff.—“No inhabitant” operates an abatement, & pltf. may proceed against the joint obligor served with process.
If this reasoning should not be found to be entirely correct, the practice, the court believes, has long prevailed, and has been found convenient, and the court would not lightly overturn it, unless its consequences should be found subversive of the ends of justice. It is also worthy of remark, that the decision of the appellate court of Virginia, above cited took place in the year 1791, anterior to our separation from that state, on a Virginia statute, which has been republished in our code, with the single additional clause above aluded to, to wit: “Unless such defendant’s “place of residence is unknown to such sheriff or officer.”
For this reason the authoity which is in point, is entitled to greater respect. But the stasutes of this state authorising the emanation of writs to other counties, in the case of joint obligors, one residing where the writ issues and others in different counties are relied on. These will be found in 1 Littell, 353, 506, a similar clause in the district court law, has been relied on in argument. To these it may be replied that as the law stood at the passage of these statutes, these courts were of limited jurisdiction, and could not send their writs to other counties, whereby the holder of such obligations, owing to the residence of the defendants, was compelled to sue each separately, in the county where each resided, and no means were afforded to combine them in the same judgment, in the same county, when they resided apart. This multiplied and increased the trouble and costs of the plaintiff. To remedy these evils, these provisions were introduced for the benefit of plaintiffs, and al *283 lowing them to resort to the remedy afforded of combining all the defendants, but did not compel them to do so. The same reply may be given to the fourth section of the act. 4 Litt. 384, which authorises the plaintiff to issue his writ to different counties, in all cases of joint defendants. He may do so if he chooses but is not compelled. But the 6th section of the act last alluded to has been more specially relied on, and merits a more particular notice; which provides that “in all cases where several persons are sued, as “joint-obligors, and the sheriff or other officer shall return "on any process issued against any of the defendants that “such defendant is not an inhabitant of his county." The plaintiff “may proceed to judgment against the defendant or defendants, without any further proceedings against “the defendant or defendants so returned” “not found.” It would seem indeed that the legislature by the last expre"sion not found” intended to authorise the plaintiff to discontinue as to defendants returned “non est inventus," contrary to the authority of the case of Shields and Perkins, heretofore decided by this court, and that the previous words “not an inhabitant of his county” had crept in by casualty or some other means, and was unobserved until the publication of the act. But however this may be, the court admits the true construction of the section, as it stands is that in the case of a return of "no inhabitant” further proceedings, as to such defendant may be discontinued and that the section must necessarily be so construed by the relative words, “so returned,” which precede the last words “not found.” From this section it is argueed that the legislature has acknowledged that the law was otherwise in the case of joint defendants in joint contracts, and that it has only applied the remedy to joint writings and has left the case of joint contracts by parol wholly unprovided for. This argument cannot be admitted as conclusive; and the act of the legislature may receive a response, without reflecting on the wisdom of the legislature. We oftentimes see legislative provisions in aid, and declaratory of the common law—and in confirmation of practices which had grown into use, and were sanctioned by time the base of which lay not theretofore in statute law. Sometimes we find the same provisons repeated in the statutes of different years, happening, perhaps from the supposition that the former provisions were repealed, unknown or obsolete, or that none such existed. At other times we find *284 legislative provisions based on a doubt of what the law was before, and adopted to solve the doubt, ex abundanti eautela. Such as some of these cases, the court supposes the provision in question. That it did not alter the law, and that the law aforetime, had provided for the case, and surely adopting this, did not impeach or alter what preceded its adoption, and the provision may be, and is deemed superfluous; of which many other instances arising from some one of the foregoing causes, may be found in our code.
After a joint debtor has plead to issue, it is too late to object that his co. debtor has not been served with process.
Dispositions taken on an unreasonable notice should be rejected, and the party ag’nst whom they are taken should not be compelled to retake them:—Confronting a witness is very important, and an adversary should not be exposed to the danger of making a witness retract, but 30 miles a day is not an unreasonable exertion for a party to encounter.
*284 The court is therefore of opinion, that the return of the sheriff in this case, was authorised and that the court did right abating the writ as to Crawford, on being assured by the return, that he belonged not to the county. The court, in this opinion has laid no stress on the objection that this question is made too late, after the defendant Sneed had pleaded to the merits and was proceeding singly with the trial; but barely remarks that this objection is deemed valid by the appellate court of Virginia in the case above cited, and not without reason: for if, the defendant who appeared, had made the objection to pleading and going into trial, on account of the return, the plaintiff might have continued the cause and have taken steps to bring the other defendant before the court, or to have procured a proper return.
The next question made by the assignment of error, deemed worthy of notice, is an exception to the use of depositions taken in Philadelphia, by the plaintiffs, on the 15th and 16th of March, 1816, the notice for the taking of which was served on the 19th of February, preceding—the distance being 670 miles. As the year in which this notice was served, was leap year, there, were 24 days between the service and the day of taking. The court admitted those depositions, not only on the ground of the sufficiency of notice, but also because the defendant at a former time, had moved to set them aside, and failing in his motion, had procured a continuance on that account, to re-examine the witnesses; and had done so, and the second depositions were filed. The latter reason cannot be sustained by this court, because the defendant was driven to an examination of the witnesses again by the court refusing to set aside depositions as the only alternative. The confronting of witnesses, is a substantial matter, and after they had made out their details, behind the backs of the party against *285 whom they were sworn he ought not to be driven to the dilemma, of making them retract by a re-examination obtained at his instance. The question must therefore, rest on the sufficiency of the notice. Allowing the defendant to travel thirty miles per day, which cannot deemed unreasonable—he would have had two days for preparation independent of the day of notice, and the first day of taking. On this account the notice cannot be deemed unreasonable.
Taking a note from one partner for a partnership debt due by simple contract, if the note is of sufficient dignity, is a merger of simple contract: so taking the note of a stranger has the same operation, but in both cases must be averred and proved that the note was received in discharge of the simple contract.
*285 The next questions in the cause arise out of the pleadings and evidence. The defendant in addition to the general issue, filed two special pleas. In the first of which he alledges in substance, that the partnership of A. Crawford and himself, was dissolved on the 17th March 1811—that due publication was made of the dissolution—that Crawford engaged to pay all the debts—that the plaintiffs having notice of the dissolution, and the terms thereof, on the 9th July 1811, adjusted the accounts claimed with A. Crawford alone—and took from said Crawford, his individual draft on Simon Gratz & Co. for one thousand dollars, and his individual note for $2022, the residue of the debt—that the plaintiffs received the amount of the draft on Gratz and Co. and after the note for the balance became due, they negligently held it up without steps to compel payment, and that they never had sued, but held up the same till the said Crawford paid large sums of money to the plaintiffs and others; and then, long after the said note became due became insolvent.
The second special plea set out the same facts, with regard to the dissolution of partnership; the engagements of Crawford to pay the debt—The knowledge of the plaintiffs of that transaction—their liquidation of the account with Crawford afterwards—the acceptance of Crawford’s individual draft on Gratz for part, and his note individually at three months. The delivery of this note is averred, and that the plaintiffs still hold it. To this plea there is a demurrer, which demurrer was sustained by the court, and the pleas adjudged insufficient, which decision is questioned by the assignment of error.
The last of the aforenamed pleas, appears to predicate the defence solelly on the supposition, that the bare act of delivering the note by the one partner after the known dissolution of the partnership, and his assumption of the debts of the firm, and the acceptance of it by the plaintiff, and *286 then still holding it, would absolve the remaining partner from his liability for the debt originally contracted by both. This hypothesis will be examined by the court. It may be considered as settled, that the acceptance of a note in discharge of an open account, either as accord and satisfaction or as payment, whether that note is the note of the person who owes the debt, or the note of some other individual, discharges the original demand. It would, not do any great violence to the principle to extend it to the case of one partner giving his individual note in like manner, for a demand due from the partnership. In accordance with this is the case of Shehy vs. Mandeville and Jamison 6 Cranch 253 and Wiseman &c. vs. Lyman, 7 Mass. Term Rep. 286. But it is also equally clear from these cases that the note must be received in satisfaction or payment of the debt. In pleading this must be averred; in proof it must be supported. But no case has been discovered by the court, nor is the court willing to admit the principle, that the delivery of the note on one side and the acceptance by the other ought to be adjudged a discharge, even between the same parties, to the original transaction, unless that note was of such high dignity as to merge the assumpsit; and then, it would only give a higher remedy, which does not seem, to be the case in this instance. Besides in the case in Cranch above aluded to, the plaintiffs had went so far as not only to take a note from one of the partners; but he had recovered judgment on the note against him, and yet even that judgment was held to be no bar to the recovery against the remaining plaintiff in a joint action. That was a stronger case than the present. The defendant in the plea now under consideration, not having averred the acceptanee of the note in payment or satisfaction of the demand, his plea was properly overruled by the court.
In a joint demand vs. two, taking the note of one to operate as a discharge of the joint demand when paid is no discharge of the dormant partner—nor is he discharged by indulgence having been given to the maker of the note till be becomes insolvent, in the case of security and principal, the security is not discharged by indulgence to the principal till he fails, unless the creditor & principal has made other arrangeme'ts without the participation of the security.
The first of the aforesaid pleas, not only rests on the ground of the acceptance and delivery of the note which has been already considered, but supposes that as thereby indulgence and still longer indulgence was given during the solvency of Crawford, and when he was paying other sums of money, until he at length became insolvent, for this cause his partner ougt to be discharged. In case of security and principal, where the creditor had made a new bargain with the principal, without the consent of the security, whereby indulgence was granted until the principal be *287 came insolvent, equity has relieved the security. But even as to security it would be difficult finding a case affording relief where the creditor had indulged and delayed without any other arrangement with the principal. But be this as it may, the doctrine cannot be applied to joint debtors as partners are, where the debt is contracted for the equal benefit of both; and where each is originally bound for the whole demand. In each case the partner sued can have no right to complain; for in case of his former partner failing, he could pay the debt, and make his partner responsible before it was irretrievably lost. To the creditor, he was equally bound to pay it. To the circumstance of the dissolution of partnership, in the present case, and Crawford's engagement with his partner, to pay the debts, the court attaches no importance. These were matters over which the creditor had no control—and which the partner could do or refuse to do, at pleasure. As to the creditors, they were res inter alios actœ, and cannot impair their right to demand and recover their debt. The first special plea of the defendant was therefore properly overruled.
Taking a note by a note by a creditor, for a debt due by a firm form one of the firm at a credit to be applied in extinguishment of the dem'd when paid is no release to the dormant partner, till the note is paid, his liability yet remains, nor is the creditor bound to sue the maker of the note.
*287 On the trial of the cause on the general issue, the defendant gave in evidence the matters set forth in his special pleas, after the plaintiffs had given evidence conducing to establish their cause of action, and a receipt of the plaintiffs was produced acknowledging the draft on Gratz to be received, and also the note at three months of A. Crawford, concluding with these words—“which draft and note, when paid, will be in full of A. Crawford and co’s. account, as above.” The plaintiffs then produced the note, which was read. Other evidence was adduced, shewing that A. Crawford had dealt largely and paid large sums of money to the plaintiffs on other accounts, after the dissolution of partnership, and that the note might have been collected after it was due. The defendant then moved the court to instruct the jury, in substance, that if that arrangement of the draft and note was made after knowledge of the dissolution of partnership, (which dissolution was proved by writing in the cause) and that Crawford had remained able to pay it till it might have been collected—and that the plaintiffs by their delay had suffered him to become insolvent, and had failed to give notice to Sneed that the debt remained unpaid, in that case the loss ought to fall on the plaintiffs. This instruction the court refused, and gave one directly contrary. This was virtually trying by motion on the evi *288 dence under the general issue what had been determined against him in overruling the pleas, and was only acting cautiously as to the mode of presenting the same defence. But in this shape the court conceives it ought to have been equally unavailing. The doctrine of notice to a debtor himself that his debt is unpaid—of the exercise of diligence by the creditor against another principal equally bound for the debt, being necessary to authorise the plaintiff to recover, was properly rejected by the court below in this case, whatever may be its applicability and propriety in the case of assignors, endorsers, or securities. The silence of the plaintiffs in failing to communicate the continuance of the debt, may give the defendant cause to complain of their lack of urbanity and politeness; but it cannot discharge his legal obligation to pay the debt contracted for the joint benefit of himself and Crawford. The court deems it unnecessary to enquire into the question whether the taking of the note did, or did not, suspend the partnership demand during the credit therein allowed. For as the court is satisfied that it did not release it, and the receipt itself shews that it was to be no discharge, until paid, and this suit was not commenced till after that credit expired, it is wholly immaterial whether the demand was then suspended or not.
After the dissolution of a partnership if one of the partners continues to deal with a former creditor of the firm, and makes payment to the former creditor, the creditor may apply the payment in discharge of the individual debt, and not to the debt due by the firm.
In the progress of the evidence in the cause, it was proved, that after the dissolution of partnership, Crawford contracted with the plaintiffs, who were whole-sale merchants of Philadelphia, other demands for goods on credit, and that he made remittances to a considerable amount, which were passed to his individual credit, for goods bought subsequent to the partnership—that a balance was still left due from him. For which balance the plaintiffs, to rebut this proof, shewed that they had sued him, and after giving him the proper credits, had recovered the balance only. The plaintiff likewise produced his letters which attended the remittances. In one of these letters, after stating the amount remitted to the plaintiffs, he adds the words, “which please collect and place to A Crawford’s credit.” In the other, the words “you will please have them collected and place the same to my credit,”—the remittances being in bills or drafts.
The counsel for defendant moved the court to instrute the jury, that if they found from the evidence the dissolution of the partnership between Crawford and Sneed, and *289 that the plaintiffs had notice of the dissolution and terms thereof, before they took the individual note of A. Crawford for the balance against Crawford and co. giving him three months credit for said balance, and that after said note of A Crawford had become due, the plaintiffs had received remittances as given in evidence, said plaintiffs ought to have credited said remittances and sums so received by them on the said note. This instruction the court overruled, and instructed the jury that said sums having been credited to Alexander Crawford’s individual account, and the transaction closed by judgment, those sums could not, on this trial at the instance of the defendant Sneed be carried to exonerate said Sneed pro tanto. The correctness of this opinion is questioned by the assignment of error, and it is insisted that altho’ the directions of Crawford by his letters were to place them to his credit, yet as he had given his individual note to the plaintiff for the account of A. Crawford & Co. the application of them to the note would have been to his credit. Altho’ this may be true, yet his individual account being equally his, the expressions do not determine which, and his own account on which he actually received the credit, was bearing interest as appears by the account filed in the suit against A. Crawford the balance of which the jury then found against him. Without repeating the rules of law relative to the application of credits, when there are more demands than one existing at the same time (which rules are well defined in the case of Brown vs. Brown, 1. Bibb, 334,) it is conceived that this cause ought to have been tried in all things as if Alexander Crawford had been before the court as nearly as could be done. Suppose then that Crawford had been before the court and a joint finding and judgment must have been rendered, and Crawford had united with Sneed in the application to transfer the credits from his own account to the partnership demand, he would certainly have been estopped by the verdict and judgment theretofore against him; to which he was a party, and in which he had accepted his full credits. It was certainly competent for Crawford and the plaintiffs to appropriate and apply the credits between them as they thought proper. They have arranged that matter by the judgment of a court of competent jurisdiction, and if Crawford could not demand a credit for them on the partnership demand, neither could Sneed, for the responsibility of the two must be equal, and what goes to *290 charge one must charge the other, and each must be discharged by the same matter of credit, which could avail the other. Besides as the receipt which Crawford had received from them, did not from its terms discharge the account of A Crawford & Co but left it existing, subject to the contingency of payment, the letters in their terms ought to he construed as applying to his individual account, which the plaintiffs credited accordingly.
Pope and Bibb, for plaintiff, Hardin, for defendants in error.
The remaining errors assigned are deemed unworthy of notice; and upon the whole the court is of opinion there is no error in the judgment of the court below, and that it must be affirmed with damages, &c.